

**NUMBER 13-04-623-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**SERGIO SIERRA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 357th District Court of Cameron County, Texas.**

---

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides
### Memorandum Opinion by Justice Yañez

Appellant, Sergio Sierra, was convicted of first-degree felony theft and sentenced to five years of confinement in the Texas Department of Criminal Justice–Institutional Division. *See* TEX. PENAL CODE ANN. 31.03 (Vernon Supp. 2007). We affirm the judgment of the trial court.

## I. Background

The background of the case and the evidence adduced at trial are well known to the parties, and therefore we limit recitation of the facts herein. In short, appellant, an attorney, approached several individuals and asked them if they wanted to make an investment by loaning his clients funds during the interim while his clients were waiting for judgments or settlements to fund. Appellant prepared promissory notes for the amounts of the loans and listed himself and his named clients as makers of the notes. Appellant made some, but not all, of the payments on the notes, and ultimately failed to repay more than $200,000 of the money he obtained through these loans.

Appellant raises sixteen issues on appeal.[1] We issue this memorandum opinion because the issues are well settled in law. *See* TEX. R. APP. P. 47.4.

## II. Quashing a Witness Subpoena

In his first issue, appellant contends that the trial court erred in quashing his subpoena for attorney Thomas Sharpe. Sharpe represented some of the complaining witnesses in a separate civil action to collect the monies at issue in this case from appellant. According to appellant, Sharpe's testimony would have shown the animus, bias, and prejudice of the complaining witnesses. The trial court quashed the subpoena on grounds that the testimony sought to be elicited was either cumulative or protected by the

---

[1] Appellant originally attempted to file a brief in this cause that was one hundred and thirteen pages in length and presented seventeen issues. The Court refused to allow this brief to be filed but did allow appellant to exceed the page requirements for the instant brief, which is fifty-seven pages in length. We note that the issues delineated in the table of contents vary from the issues delineated in the statement of issues presented, which, in turn, vary from those issues supported by argument and analysis in the body of the brief. Although this practice fails to conform to the appellate rules, we have reordered and renumbered those issues presented by appellant which are arguably adequately briefed and will address them herein. *See* TEX. R. APP. P. 38.1(e),(f),(g),(h).

attorney-client privilege.

We review a motion to quash a subpoena under an abuse of discretion standard. *Muennink v. State*, 933 S.W.2d 677, 684 (Tex. App.–San Antonio 1996, pet. ref'd). Criminal defendants have a right to compulsory process for obtaining witnesses. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. However, the right to compulsory process is not absolute: a defendant has the right to secure the attendance of witnesses whose testimony would be both material and favorable to his defense. *See Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998). To exercise this right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Id.* at 528.

In the instant case, appellant did not make the required showing that Sharpe's testimony would be both material and favorable to the defense. The State presented evidence and testimony that the sought-after testimony was both cumulative and tangential to the case-in-chief. Further, and most saliently, appellant failed to provide sworn evidence or agreed facts regarding the materiality and favorableness of Sharpe's testimony. Accordingly, the trial court did not abuse its discretion in granting the State's motion to quash the subpoena. *See id.* We overrule this issue.

### III. Legal and Factual Sufficiency of the Evidence

In his second, third, fourth, fifth, and tenth issues, appellant argues that the evidence was legally and factually insufficient to support his conviction.

In reviewing legal sufficiency, we examine the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 161

3

(Tex. Crim. App. 2006). When performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing factual sufficiency, we view all of the evidence in a neutral light to determine whether (1) the evidence in support of the jury's verdict, although legally sufficient, is nevertheless so weak that the jury's verdict seems clearly wrong and unjust; and (2) in considering conflicting evidence, the jury's verdict, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We consider all the evidence; however, we do not intrude upon the jury's role of assigning credibility and weight to the evidence. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

A person commits theft if the person unlawfully appropriates property with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2007). Appropriation is unlawful if it is without the owner's effective consent. *See id.* at § 31.03(b)(1). An owner's consent is not effective if it is induced by deception. *See id.* at § 31.01(3)(A). "Deception" means, inter alia:

    (a)    creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; or

    (b)    failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true; or

(c)   promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

*See id.* § 31.01(1)(A), (B), (E) (Vernon Supp. 2007).

To constitute theft, the defendant must intend to deprive the owner of the property at the time the property is taken. *Wilson v. State*, 663 S.W.2d 834, 836-37 (Tex. Crim. App. 1984) (en banc). The intent to deprive is determined from the words and acts of the accused. *King v. State*, 174 S.W.3d 796, 810 (Tex. App.–Corpus Christi 2005, pet. ref'd). Specific intent to commit theft can be inferred from the surrounding circumstances. *See Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974). A jury may infer intent from a defendant's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

In determining whether the evidence is legally sufficient to establish whether appellant had the criminal intent to commit theft, we examine evidence "pertaining to whether appellant personally gained from what was allegedly taken, whether he partially performed on any of the representations that were made to the complainants, whether he used deception to obtain property, and whether any inferences can properly be drawn from the combined force of the circumstantial evidence." *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd); *see also Reed v. State*, No. 13-05-00364-CR, 2008 Tex. App. LEXIS 2188, *5 (Tex. App.–Corpus Christi Mar. 27, 2008, no pet.)(mem. op.) (not designated for publication).

A review of the record evidence shows that appellant approached several

individuals, including Mariano Garcia, Ruben Rodriguez, Claude Harden, Tim Hartzog, and Juan Carlos Cristobal, and asked them if they wanted to invest funds. Appellant represented that some of his clients had received judgments or settlements in their favor and were interested in obtaining short-term loans until their judgments or settlements had funded. These individuals agreed to loan funds to appellant's clients.

Appellant prepared promissory notes for the amount of the loans and listed himself and his various clients as makers of the notes. Upon receiving the checks from the investors, appellant deposited them into his personal checking account. Appellant's checking account records do not indicate corresponding disbursements to these clients, although he argued at trial that the disbursements were made in cash. Testimony adduced at trial indicates that appellant's clients were not, in fact, waiting for settlement disbursements or judgment payments.

Appellant made some, but not all, of the payments on the notes, and ultimately owed the investors more than $200,000. The record evidence suggests that appellant utilized investments received from later investors to pay the earlier investors. Appellant also made some of the payments to the investors by writing a check on one of his closed bank accounts.

Appellant attacks the legal and factual sufficiency of the evidence by contending, essentially, that this is a civil matter involving a debtor-creditor relationship and the evidence herein does not establish the crime of theft. Appellant alleges that the complaining witnesses were his business partners. Appellant further notes that each of the investors was partially repaid and that some were repaid in full. Appellant also points out that the complainants treated the investments, for income-tax purposes, as business

6

loans or business losses.

"The critical distinction between conduct that is criminal versus civil in nature is whether the record shows deception and not merely a failure to perform." *Christensen*, 240 S.W.3d at 34. In other words, a claim of theft, made in connection with a contract, requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.–Houston [14th Dist.] 2006, no pet.). If money was voluntarily given to appellant pursuant to a contract and there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand. *Id.* at 229-30. "In sum, the State must show a rational factfinder could have found appellant had no intention of fulfilling his obligation under the agreement, and his promise to perform was 'merely a ruse to accomplish theft by deception.'" *Id.* at 230 (quoting *King v. State*, 17 S.W.3d 7, 15 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd)); *see also Reed*, 2008 Tex. App. LEXIS 2188, at *5.

We agree with appellant that a theft conviction resulting from an otherwise contractual civil dispute may warrant reversal where there is insufficient evidence to support a finding that the accused acted with the requisite criminal intent. *See Peterson v. State*, 645 S.W.2d 807, 811-12 (Tex. Crim. App. 1983); *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim. App. 1982). However, based on the testimony adduced at trial, we are unable to agree that such is the case herein. Although it is clear that appellant partially performed under the promissory notes at issue, the evidence indicates that appellant used deception to gain control of the funds at issue and that he utilized the funds for his own personal use. The complaining witnesses testified that they had given appellant the money

7

based on appellant's representations that the money was being used for short-term loans for appellant's clients, who had received judgments or settlements in their favor, but which had not yet been funded. Instead, some of the clients subject to the loans had not received judgments or settlements, and appellant deposited the money into his personal account.

Based on the foregoing, we conclude that the evidence is legally and factually sufficient to support appellant's conviction for theft. We overrule these issues.

## IV. Extraneous Offenses

In his sixth issue, appellant contends that the prosecutor caused reversible error by making an oral allegation of an extraneous offense, that is, improper influence. *See* TEX. PENAL CODE ANN. § 36.04 (Vernon 2003). In this context, appellant points to a colloquy between the prosecutor and a witness in which the prosecutor established that appellant sought and received a temporary restraining order in a separate legal proceeding, and the prosecutor then questioned the witness regarding whether the trial judge in that separate proceeding had been appellant's roommate in college.

This discourse was the subject of a prompt objection on the grounds of relevance and assuming facts not in evidence. Counsel requested a limiting instruction and mistrial. The trial court sustained the objection, instructed the jury to disregard the question, and denied the mistrial.

An objection stating one legal theory may not be used to support a different legal theory on appeal. *Chambers v. State*, 903 S.W.2d 21, 32 (Tex. Crim. App. 1995). A general relevance objection at trial does not preserve a rule 404(b) extraneous offense claim. *Carr v. State*, 600 S.W.2d 816, 817 (Tex. Crim. App. 1980); *Wilson v. State*, 541

8

S.W.2d 174, 175 (Tex. Crim. App.1976). Moreover, there is no indication in the record that the trial court's instruction to the jury did not adequately rectify the brief question and answer. Accordingly, this issue is overruled.

In his seventh issue, appellant contends the trial court erred in admitting evidence of extraneous offenses of forgery. Appellant similarly failed to object to the alleged evidence on grounds of an extraneous offense. *See Carr*, 600 S.W.2d at 817. Accordingly, this issue is also overruled.

## V. Charge Error

In his eighth issue, appellant contends that the trial court erred in denying a converse charge in the application paragraph.[2] When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (on rehearing).

The charge in this case instructed the jury to find appellant not guilty if the jurors had a reasonable doubt whether "at the very time of acquisition . . . [of the property] Sergio Sierra intended to deceive . . . ." The charge instructed the jury to find appellant guilty if the jurors believed that he appropriated currency from the victims without their effective consent, namely by deception, but to find him not guilty if they had a reasonable doubt.

---

[2] A converse charge is "one in which each essential element of the offense is submitted for the jury's consideration with the instruction to acquit if the jury does not find that element to be true or has a reasonable doubt about it." *See Minor v. State*, 662 S.W.2d 659, 661 (Tex. App.–San Antonio 1983, no writ).

A thorough reading of the entire charge confirms that the jury was properly instructed to find appellant not guilty if the jurors had a reasonable doubt as to appellant's guilt of the offense of theft. *See Moore v. State*, 100 Tex. Crim. 352, 273 S.W. 588 (1925); *Davila v. State*, 749 S.W.2d 611, 614 (Tex. App.–Dallas 1982, pet. ref'd). Accordingly, this issue is overruled.

In his ninth issue, appellant argues that the trial court erred in refusing his special charge on intent. Appellant argues that his theory of defense at trial was that he intended to pay the loans back. Appellant directs our attention to his counsel's requested instruction in the charge conference:

> [Y]ou are further instructed that even if you find from the evidence beyond a reasonable doubt that the defendant obtained the property from the complainant and that he secured the property by deception, if any, you should find from . . . the evidence that there is no other evidence of intent on the part of the defendant not to pay for such services at the time he made the promise to pay, or if you have a reasonable doubt that there is such evidence of said intent, you will acquit the defendant and find him not guilty.

We cannot conclude that appellant's proffered instruction was a correct statement of the law. In the instant case, the trial court properly instructed the jury regarding intent. The charge informed the jury that a person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03(a). The charge informed the jury that "deception" means:

> (a)    creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; or

> (b)    failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true; or

10

(c)    promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

This language is derived directly from the Texas Penal Code's definition of "deception." *See* TEX. PENAL CODE ANN. § 31.01(1)(A), (B), (E). The charge further instructed the jury that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct," and "[a] person acts knowingly, or with knowledge, with respect to the circumstances surrounding his conduct when he is aware that the circumstances exist." This language also derives from the penal code. *See id.* § 6.03(a), (b) (Vernon 2003). We conclude that the trial court adequately stated the elements of the offense, applied them to the facts as alleged in the indictment, and instructed the jury on the necessity of the State's proving each element beyond a reasonable doubt. *See Eckert v. State*, 623 S.W.2d 359, 362 (Tex. Crim. App. 1981); *Minor v. State*, 662 S.W.2d 659, 661 (Tex. App.–San Antonio 1983, no writ). Accordingly, this issue is overruled.

## VI. Peremptory Challenge

In his eleventh issue, appellant argues that the trial court erred in overruling his request for an additional peremptory challenge when one of the jurors stated that one of the complaining witnesses had been her middle school teacher and had also babysat her when she was a child.

Harm from the erroneous denial of a defense challenge occurs: (1) when a defendant exercises a peremptory challenge on a veniremember whom the trial court

11

should have excused for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory challenges, and (3) the defendant unsuccessfully requests an additional peremptory challenge which he claims he would use on another veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury. *Newbury v. State*, 135 S.W.3d 22, 31 (Tex. Crim. App. 2004). The record reflects that this veniremember did not actually serve on the jury in this case, and the record does not reflect that the trial court erroneously denied any challenge for cause which resulted in seating any identified "objectionable" juror. Accordingly, this issue is overruled. *See id.*

## VII. Prosecutorial Misconduct

In his twelfth issue, appellant complains that the prosecutor engaged in improper ad hominem attacks against defense counsel. Defense counsel sought a limiting instruction and mistrial regarding documents in evidence. The trial court reiterated a limiting instruction previously given and overruled the request for a mistrial, whereupon the prosecutor resumed argument by stating, "Listen to him. Listen to him over there whining. And he's whining to you, ladies and gentlemen –." Defense counsel's objection to this ad hominem attack was overruled.

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals has consistently held that argument that "strikes at a defendant over the shoulders of defense counsel" is improper. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007); *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999).

12

In the instant case, the prosecutor's comment was directed at defense counsel's theories and arguments. Such argument does not warrant a reversal for attacking the personal morals and integrity of defense counsel. *Garcia v. State*, 126 S.W.3d 921, 925 (Tex. Crim. App. 2004) (concluding that when the prosecutor told the jury that defense counsel's arguments were "hogwash," the prosecutor was merely stating, in colorful language, his opinion regarding the merits of defense counsel's arguments).

Even if such argument constituted error, the alleged error would be nonconstitutional and, therefore, not reversible unless it affected appellant's substantial rights. We conduct a harm analysis using the following three-factor test: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Reviewing the record in its entirety, we conclude that the error, if any, did not affect appellant's substantial rights. We are therefore compelled to overrule this issue. In reaching this conclusion, however, we do not condone such argument, and we trust that this result will not encourage inappropriate conduct by attorneys on either side of the bar.

In his fourteenth issue, appellant argues that the prosecutor improperly called the defendant's failure to testify to the attention of the jury by pointing out that appellant failed to appear at his disciplinary hearing before the State Bar of Texas. We disagree with appellant's contention because this argument did not constitute an inferential comment on appellant's failure to testify. *Antwine v. State*, 572 S.W.2d 541, 544 (Tex. Crim. App. 1978)

13

("In order for an argument to constitute a comment upon the appellant's failure to testify, it must either be a direct comment or a necessary inference from the argument made."). Moreover, we note that appellant's only objection at trial was to the relevance of this testimony. Accordingly, this issue is overruled.

## VIII. Motion to Quash

In his thirteenth issue, appellant contends that the trial court erred in overruling his motion to quash seeking specific allegations of the manner and means of deception. The indictment alleged that:

> SERGIO SIERRA . . . did then and there, pursuant to one scheme or continuing course of conduct that began on or about the 7th day of June, 2000, and continued until on or about the 20th day of September, 2001, unlawfully appropriate, by acquiring or otherwise exercising control over the property, to wit: United States Currency or negotiable instruments, from Mariano Garcia, the owner thereof, without the effective consent of the owner, namely, by deception, and with intent to deprive the owner of the property, and the aggregate value of the property obtained was $100,000 or more but less than $200,000.

The indictment continued with five similar paragraphs pertaining to different complainants and concluded with a paragraph aggregating the amounts alleged to have been taken.

When reviewing a trial court's decision to deny a motion to quash an indictment, we apply a de novo standard of review. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Because an accused has both federal and state constitutional rights to notice, a charging instrument must be specific enough to notify the accused of the nature of the accusation against him so that he may prepare a defense. *Id*.; *see also* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. However, this requirement may be satisfied by means other than the language in the indictment. *See Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). "When a motion to quash is overruled, a defendant suffers no harm

14

unless he did not, in fact, receive notice of the State's theory against which he would have to defend." *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art 21.19 (Vernon 2003) ("An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."). Except in rare cases, a charging instrument that tracks the language of a criminal statute provides sufficient specificity to provide a defendant with notice of a charged offense. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. *See* TEX. PENAL CODE ANN. § 31.03(a) (Vernon 2003). Appropriation of property is unlawful if it is without the owner's effective consent. *See id.* § 31.03(b)(1). Generally, if the legislature statutorily defines a term, the State need not further allege it in the indictment. *Geter v. State*, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989). If the statutory term provides for more than one manner or means to commit that act or omission, however, then, upon timely request, the State must allege the particular manner or means it seeks to establish. *Id.* at 405-06.

The court of criminal appeals has held that "in a theft prosecution where the State relies upon a defendant's act or omission to negate consent pursuant to § 31.01(4) [now section 31.01(3)], the indictment must allege which of the statutory negatives vitiated consent, or the indictment will be subject to a timely motion to quash for lack of notice." *Geter*, 779 S.W.2d at 407; *see* TEX. PENAL CODE ANN. § 31.01(3) (Vernon Supp. 2007) (defining "effective consent"). The Legislature has provided that consent is not effective if it is:

15

(1)    induced by deception or coercion;

(2)    given by a person the actor knows is not legally authorized to act for the owner;

(3)    given by a person who because of their youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable property dispositions;

(4)    given solely to detect the commission of an offense; or

(5)    given by a person who, by reason of advanced age, is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property.

*See* TEX. PENAL CODE ANN. 31.01(3).

Thus, under *Geter*, it appears that appellant's motion to quash had merit. However, when an indictment fails to convey some requisite item of notice, reversal is required only if the lack of notice had an adverse impact on the defendant's ability to prepare a defense. *Geter*, 779 S.W.2d at 407; *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986) (en banc).

In his brief to this Court, appellant makes no effort to demonstrate that the defect in the indictment harmed his defense. Reviewing the issue of notice in the context of the case before us, we conclude that appellant's ability to prepare a defense was not hindered by the trial court's failure to quash the indictment and require the State to specify the exact definition of "deception" it planned to proceed on at trial. We also conclude that the impact on appellant, if any, was negligible. *Adams*, 707 S.W.2d at 903. The ultimate test is whether appellant received "fair notice" of the charges against him so as to adequately prepare for his defense. *Gorman v. State*, 634 S.W.2d 681, 684 (Tex. Crim. App. 1982, op. on reh'g). We conclude that any defect in the form of the indictment, if one exists, did

16

not prejudice the substantial rights of appellant. *See* TEX. CODE CRIM. PROC. ANN. art. 21.19 (Vernon 2003); *Dodson v. State*, 800 S.W.2d 592, 595 (Tex. App.–Houston [14th Dist.] 1990, pet. ref'd). Accordingly, this issue is overruled.

## IX. Collateral Estoppel

In his fifteenth issue, appellant contends that the trial court erred in overruling his special verified plea of collateral estoppel. According to appellant, the instant criminal proceeding was barred by collateral estoppel based on prior disciplinary proceedings against him by the State Bar of Texas. Appellant cites no relevant Texas authority in support of his argument, and we have found none. In fact, the Texas Rules of Disciplinary Procedure specifically provide that "[n]either the complainant nor the Respondent is affected by the doctrines of res judicata or estoppel by judgment from any Disciplinary Action." TEX. R. DISCIPLINARY P. 15.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (Vernon 2005). Moreover, it has been held that the disciplinary rules have no bearing on a criminal prosecution for theft. *Hefner v. State*, 735 S.W.2d 608, 626 (Tex. App.–Dallas 1987, pet. ref'd). This issue is overruled.

## X. Comment on Weight of Evidence

In his sixteenth issue, appellant argues that the trial judge's comment on the weight of the evidence resulted in the judge being biased. Appellant's complaints center on the following instruction included in the charge:

> 'Effective consent' means assent in fact whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception.

Appellant appears to argue that the last sentence of this instruction emphasized the State's theory of deception and amounted to a comment on the weight of the evidence. The

17

sentence of which appellant complains is a correct statement of the law and is taken from the penal code. *See* TEX. PENAL CODE ANN. § 31.01(3) (Vernon Supp. 2007). Generally, "a correct statement of the law by the trial court, even during trial, is not reversible" as a comment on the weight of the evidence. *Aschbacher v. State*, 61 S.W.3d 532, 538 (Tex. App.–San Antonio 2001, pet. ref'd). Accordingly, this issue is overruled.

## XI. Conclusion

Having overruled each of appellant's issues, the judgment of the trial court is affirmed.

_____
LINDA REYNA YAÑEZ,
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 26th day of June, 2008.